UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FLTR INC.,<br><br>       Plaintiff,<br><br>v.<br><br>SAFE AND CLEAN PROTECTION, LLC,<br>and AMS VENTURES, LLC,<br><br>       Defendants. | Civil Action No. 21-CV-11546-AK |

**<u>MEMORANDUM AND ORDER ON MOTION FOR DEFAULT JUDGMENT</u>**

**A. KELLEY, D.J.**

    Plaintiff FLTR, Inc. ("FLTR"), is a Washington-based corporation that develops, manufactures, and sells personal protective equipment. [Dkt. 1 at ¶ 3]. FLTR alleges that Defendants Safe and Clean Protection, LLC ("Safe and Clean"), and AMS Ventures, LLC ("AMS Ventures") (hereby, "Defendants"), did not deliver on their promise to provide FLTR face masks that FLTR paid for. [Dkt. 1 at ¶ 1]. As alleged in the Complaint, FLTR paid Defendants $462,500 for products the Defendants did not possess. [Dkt. 2 at ¶ 2]. FLTR obtained an entry of default after Defendants failed to respond to the Complaint or defend this action. FLTR now moves for default judgment. [See Dkts. 19-21, 24]. For the following reasons, the motion for default judgment [Dkt. 24] is **GRANTED**.

**I.    BACKGROUND**

    On August 11, 2021, FLTR contacted Defendants about purchasing three million boxes of face masks, with fifty masks included in each box. [Dkt. 1 at ¶¶ 12-13]. An employee of the Defendants responded and agreed to sell 250,000 boxes of face masks. [Id. at ¶ 14]. The next

day, Defendants provided FLTR with an invoice for $462,500, which represented the agreement between the parties for the sale of the face masks. [Id. at ¶¶ 16-17]. Upon receiving the invoice, FLTR sent a wire transfer for the invoiced amount to the Defendants. [Id. at ¶ 18].

However, after the wire transfer was completed, Defendants never provided FLTR with the face masks, even as they continued to misrepresent to FLTR that they had the face masks in their possession. [Id. at ¶ 20]. This continued until August 30, 2021, at which point FLTR demanded a refund for the amount paid. [Id. at ¶ 21]. On September 8, 2021, Defendants sent FLTR a video displaying the masks. [Id. at ¶ 23]. Defendants also informed FLTR that the masks could be picked up at one of three locations. [Id.]. However, despite multiple attempts by FLTR to pick up the masks, they still did not receive the masks. [Id. at ¶ 24]. On September 16, 2021, Defendants communicated to FLTR that they did not possess the face masks and that they never had them in their possession to begin with. [Id. at ¶ 25]. Due to Defendants' failure to provide the masks, FLTR lost a potential customer, which resulted in lost profits. [Id. at ¶ 28].

FLTR filed their complaint against Defendants on September 20, 2021, seeking monetary relief, and brought claims of breach of contract (Count I), fraud and misrepresentation (Count II), unjust enrichment (Count III), and a violation of Massachusetts General Law Chapter 93A, Section 11 (Count IV). [Dkt. 1 at 7-11]. FLTR served the Defendants copies of the complaint on October 13, 2021, and the Defendants had until November 3, 2021, to respond. [See Dkt. 6]. Defendants failed to respond to the complaint.

In accordance with the Federal Rule of Civil Procedure 55(a), FLTR requested a notice of default on November 30, 2021. [Dkt. 7]. However, this request was denied because there was a question as to subject matter jurisdiction. [Dkt. 9]. When that issue was resolved, FLTR requested a notice of default a second time on April 20, 2022 [Dkt. 12], but the Court denied that

request as well reasoning that nothing had been filed to indicate that formal service was ever effected on Defendants. [Dkt. 13]. On June 2, 2022, FLTR served Defendants once more, and the Defendants had until June 23, 2022 to respond. [Dkts. 15-16]. Defendants once again failed to respond, and FLTR once again requested a notice of default. [Dkt. 17]. On November 10, 2022, the clerk entered default against Defendants for their failure to respond or otherwise defend this case. [Dkts. 19-21]. On November 14, 2022, FLTR moved for default judgement in accordance with the Court's standing order on motions for default judgment. [Dkt. 24].

**II.    LEGAL STANDARD**

The Federal Rules of Civil Procedure provide a two-step process for default judgment. See Fed. R. Civ. P. 55. First, the clerk must enter a notation of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Second, upon obtaining a notation of default, the plaintiff must apply to the court for default judgment where the amount of damages is not a "sum certain." See Fed. R. Civ. P. 55(b). The party that has defaulted "is deemed to have admitted all of the allegations in the complaint." CNE Direct, Inc. v. Blackberry Corp., 55 F. Supp. 3d 233, 234 (D. Mass. 2014); see SEC v. Tropikgadget FZE, 146 F. Supp. 3d 270, 275 (D. Mass. 2015) (noting that entry of default "constitutes an admission of all facts well-pleaded in the complaint" (internal quotations and citation omitted)). However, the court independently "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (citation omitted). While the court may set a hearing to determine damages "when the amount is in dispute or is not ascertainable from the pleadings," the court may order default judgment without a hearing where "the allegations in the

complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002).

### III. DISCUSSION

FLTR has satisfied the first step of the default judgment process. [Dkts. 19-20]. The Court therefore must evaluate whether they has shown that Defendants are liable for breach of contract, fraud and misrepresentation, unjust enrichment, and a violation of Massachusetts General Laws chapter. 93A, Section 11. If the Court finds that FLTR has made such a showing, it must assess their request for damages.

#### A. Breach of Contract

To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under that contract, and that the breach caused the plaintiff damage. See Guckenberger v. Boston Univ., 957 F. Supp. 306, 316 (D. Mass. 1997). FLTR argues that Defendants formed an agreement to supply them with 250,000 boxes of face masks for a payment totaling to $462,500, and that Defendants materially breached that agreement by failing to provide FLTR with the requisite items. [Dkt. 1 at ¶¶ 31-32]. Defendants represented to FLTR that they had in their possession the items requested, and that they were willing to sell them for a certain price. [Dkt. 1 at ¶ 14]. Relying on this, FLTR agreed to purchase the face masks, signifying the formation of a valid contract, and Defendants sent an invoice which listed the purchased items, the quantity, the rate of purchase, and the total amount due. [Dkt. 24 at 8]. Pursuant to the agreement, FLTR gave Defendants the full amount of money in exchange for the purchase of face masks. [Dkt. 1 at ¶ 18]. However, FLTR alleges that Defendants have not fulfilled their duties under the agreement,

as possession of the items listed on the invoice was never transferred to them. [Id. at ¶ 19]. FLTR further claims that Defendants' breach caused them to lose $462,500. [Dkt. 24 at 9].

FLTR has shown that a valid contract existed between them and the Defendants which was backed by consideration; that Defendants breached their contractual obligations; and that as a result of Defendants' breach, they incurred damages. Therefore, FLTR has made a sufficient showing that Defendants breached their agreement. See Pavao v. Camara No. 12-11028-DJC, 2014 WL 2453090, at *1 (D. Mass. May 29, 2014) (holding that the plaintiffs successfully showed that the defendants breached an agreement by failing to pay an amount of money owed to them).

### B. Fraud and Misrepresentation

FLTR alleges that Defendants falsely presented, through fraudulent and misleading statements, that they had a certain number of face masks available for purchase, despite knowing that they did not possess the items in question. [Dkt. 1 at ¶¶ 35, 37]. To establish fraud under Massachusetts law, FLTR must show that Defendants represented a material fact with full knowledge of its falsity for the purpose of inducing FLTR to act upon it, and that FLTR relied on that representation as true and acted upon it to their detriment. See Taylor v. Am. Chem. Council, 576 F.3d 16, 31 (1st Cir. 2009).

Defendants claimed to possess a certain quantity of face masks, despite not having them in their possession. [Dkt. 1 at ¶ 14]. They communicated to FLTR that they had the face masks and provided FLTR an invoice to make payment for their delivery. [Id. at ¶ 16]. FLTR relied on the Defendants' representation that they would provide Plaintiff with the fixed amount of face masks needed, and FLTR later discovered that Defendants did not possess the face masks. [Dkt. 1 at ¶ 26]. As a result of this reliance, FLTR claims that they lost a potential customer, as well as

the amount they wired Defendants for the delivery of the face masks. [Dkt. 1 at ¶ 27]. FLTR has thus established every element needed to support their claim of fraud.

### C. Unjust Enrichment

FLTR claims that Defendants have been unjustly enriched due to the payment FLTR made to Defendants to purchase the face masks. [Dkt. 1 at ¶ 47]. To prevail on this claim, FLTR must show that Defendants unfairly benefited from their deceitful conduct. Alharbi v. Beck, 103 F. Supp. 3d 166, 167 (D. Mass, 2015). This involves demonstrating that a benefit was conferred on Defendants by FLTR with Defendant's knowledge, and that Defendant retained said benefit in an unjust manner. Mukthineni v. Paladugu, No. 16-10989-GAO, 2017 WL 2483706, at *5 (D. Mass. Jun. 8, 2017). Defendants received $462,500 from FLTR in exchange for agreeing to deliver a certain quantity of face masks to them. However, despite their best efforts, FLTR has still not received the face masks in question, as Defendants later claimed that they never possessed them to begin with. Furthermore, Defendants have not refunded the amount paid to them back to FLTR. [Dkt. 1 at ¶¶ 27-28]. The amount paid to Defendants is a benefit to them that has been retained in an unjust manner due to their non-deliverance of the face masks, and so, FLTR has made a sufficient showing to establish unjust enrichment as well.

### D. Violation of Mass. Gen. Laws ch. 93A, § 11 ("Chapter 93A")

FLTR requests that this Court award damages in the amount they paid Defendants in exchange for the face masks, as well as doubling that amount pursuant to Chapter 93A. [Dkt. 24 at 13]. Chapter 93A provides relief to "any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice." Mass. Gen. Laws ch. 93A, § 11. Liability under Chapter 93A is decided on a case-by-case

basis, and courts have repeatedly emphasized that such claims are fact-specific inquiries. Arthur, Inc. v. Dooyang Corp. 147 F.3d 47, 55 (1st Cir. 1998) (quoting Linkage Corp. v Trustees of Boston University, 679 N.E.2d 191, 209 (1997)). To successfully state a claim under Chapter 93A, the defendant must have performed an unfair act or some deceptive practice, and this act must have caused loss of money or property. Anoush Cab, Inc. v. Uber Techs. Inc., 8 F.4th 1, 16 (1st Cir. 2021). Therefore, FLTR must prove that Defendants engaged in a business or trade and subsequently committed an unfair or deceptive practice that caused economic injury. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009).

For the purposes of establishing whether certain conduct is 'unfair or deceptive' under Chapter 93A, courts generally examine whether (1) the conduct is immoral or unethical; (2) substantial injury is caused to either consumers or competitors as a result of the conduct; and (3) the conduct is "within at least the penumbra of some common-law, statutory, or other established concept of unfairness." Id.; see Arthur, 147 F.3d at 55 (finding breach of contract gave rise to a Chapter 93A claim where an industrial conglomerate hired a consulting firm and reaped the benefits of the firm's work without paying them and having no intent to pay them). Breaches of contract do not automatically give rise to a Chapter 93A violation. Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985).

Both FLTR and Defendants are engaged in the business of trade or commerce within the meaning of Chapter 93A. [Dkt. 1 at ¶ 55]. Defendants represented to FLTR that they had in their possession the requested quantity of face masks and further requested payment a significant payment for delivery of the masks. [Dkt. 1 at ¶¶ 14, 18]. They did this knowing that they did not have the masks, even providing FLTR with false information as to how to obtain the face masks. [Id. at ¶¶ 23, 24]. This course of action, is not only a breach of contractual duties and

good faith, but also qualifies as deceptive conduct, as Defendants knowingly entered this arrangement intending to benefit to FLTR's detriment. FLTR has made a sufficient showing for their Chapter 93A claim.

### E. Damages

FLTR has requested that this Court award punitive, multiple damages due to Defendants' violation of Chapter 93A. [Dkt. 1 at 12]. The question of whether multiple damages are appropriate depends on the facts of the case. Arthur, 979 F. Supp. at 926. "Punitive damages are awarded only for 'willful or knowing' violations of [S]ection 2 of Chapter 93A." Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752, 770 (1st Cir. 1996) (citing Mass. Gen. L. ch. 93A, § 11). Still, "shades of culpability . . . matter in applying the punitive damages provision" of Chapter 93A, and intentional misconduct "does not automatically trigger punitive damages." Id. Conduct must "rise to [a] level of callousness or meretriciousness that would justify multiple damages." Id. at 771. For instance, a defendant who is "deliberately deceptive and entirely disdainful of his commitments" may be subject to multiple damages under Chapter 93A. VMark Software, Inc. v. EMC Corp., 642 N.E.2d 587. 597 (Mass. App. Ct. 1994). FLTR has shown that Defendants' conduct was sufficiently intentional and callous such that multiple damages are justified here. Defendants told FLTR that they were in possession of numerous face masks, induced FLTR to make a substantial payment on the promise that the face masks would be delivered to them, sent FLTR false information about how to obtain the face masks, and subsequently revealed to FLTR that they did not—and never did—have the face masks. [Dkt. 1 at ¶ 14]. Therefore, the Court awards double damages to FLTR for Defendants' violation of Chapter 93A.

### IV. CONCLUSION

For the foregoing reasons, FLTR's motion for default judgment [Dkt. 24] is **GRANTED**. Total damages are awarded against Defendants and in favor of Plaintiff in the amount of $925,000.[1] That total award includes damages of $462,500, which is doubled due to Defendants' violation of Chapter 93A. See Mass. Gen. Laws ch. 93A, §11.

**SO ORDERED.**

Dated: May 1, 2023

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge

---

[1] FLTR does not seek attorneys' fees and costs. [See Dkt. 24 at 13].